My name is Tony Shaw, Charles Anthony Shaw from Prescott, Arizona, for Mr. McBurnie. The main issue I want to talk about first is the First Amendment free speech claim we have. Mr. McBurnie was an electrician for the City of Prescott. He reported a complaint to the Arizona Department of Occupational Safety and Health, ADOSH, regarding the requirement of his employers to make him train unqualified people in electrical business. He was the electrician for a cause which could cause death and serious injury to other employees and citizens. Is there any dispute that he, in fact, did that? I mean, there was a little muttering in the appellant's brief that suggested that maybe this meeting was just some kind of standard meeting or one instigated by the city. And, I mean, is it clear that he, in fact, filed a complaint with the city? Well, he did it orally. He went to the Arizona Department of Occupational Safety and made a complaint orally that this is unsafe for the citizens and other employees of the city that he be required to train unqualified people in electrical work, where they set up all these things and have wires going, and their parks and recreation department. The issue is, though, framed by the district court in this case, is whether this is a part of his official job duties under the Garcetti case, because he had made these complaints before. Counsel, I can see the strength of your argument on the Garcetti issue. Frankly, what troubles me the most is McBurney got a six-day jury trial and lost on the retaliation issue. And even if the court did break out some things and not send them to the jury on various things on various grounds, it's just such a colossal waste of resources that the law is very, very indulgent toward judgments that result from a jury trial. I don't really see why it's so essential to break out these other claims. Well, because the other claim, if you looked at the whole transcript, the First Amendment claim is the main part of the case we presented. And we were presenting it at that time because of a wrongful discharge claim, which was thrown out, and the public policy would have been this. The First Amendment was summary judgment. But also, my understanding is that the FLSA retaliation claim, and this may be what's bothering Judge Kleinfeld, I mean, it was very questionable in terms of timing, because it was long before he was terminated. Whereas this was — I mean, there's no doubt that he was terminated, in fact, partly because of — at least to some degree because of this. It was in the — his negative evaluation that preceded his termination, wasn't it, that he had — that he had refused to train these people? At least that much was in the agreement. Yes. That was part of it. Correct. So — and it was — the timing was fairly close in terms of this, but not in terms of the FLSA retaliation. Well, correct. And that gets into the FLSA argument. Our argument there is the termination, which was the only adverse action we were allowed to go to the jury on, was very difficult. But in terms of the termination, which you did go to the jury on, it was pretty shaky in terms of the causation. Correct. We agree with that. It wasn't much, much stronger in terms of the causation. Correct. The causation is much stronger on the First Amendment claim. I also think it's stronger on these other adverse actions that we've raised in our brief. Now, are you — in terms of the Garcetti issue, I mean, is your main contention that if he — because he went outside the agency, that that is not his job and it's — and that the only case law to the contrary in this circuit are these two policeman cases about going to the FBI. Is that basically accurate? Yes, that is accurate. And all the other cases seem to say if you go outside, go to an outside agency, if you go to the press, if you go somewhere that anybody could go, then it is protected. We think it's rather not — I mean, rather clear that an employer would not commission its employee to make whistleblowing-type First Amendment free speech cases against the employer to an outside government agency. I wonder if it matters. I can see the strength of your argument that under Garcetti, talking outside of school is still protected by the First Amendment. However, I don't know if it would have mattered. It looks to me like after six days, the jury decided this guy was bad news. It was reasonable to fire him. And then I look at the record. Oh, he gets all up on his high horse about having to clean toilets. But he's the guy that asked for the transfer to parks and maintenance or whatever it was called, where everybody — they rotate the unpleasant duty and everybody has to clean toilets when they're in parks and maintenance. And it was his idea to request it. He had a job where they didn't do that. He just didn't like the circumstances. And it looks like the jury just thought this is a troublesome guy and he got fired because he's not a guy you'd want working for you, not because it was retaliation for arguably unlawful activity. Well, Judge Kleinfeld, we don't know what the jury felt. We didn't get the interview. Well, we do know they returned a verdict against him. They returned a verdict, but it's only on the discharge claim, on the anti-retaliation claim, which was really hard for us to prove. They said his discharge for that reason wasn't retaliation, but it's true. They said the discharge for that reason was not unlawful retaliation, but they'd be looking at the discharge as well as the retaliation there. Discharge is — well, when they decide the discharge was not caused by retaliation for his FLSA claim, implicit in that would be a judgment they had other reason to discharge him. And you're just assuming, and it strikes me as a pretty arguable one, that the discharge must have been something else they shouldn't have done rather than discharging him because he was a bad employee. Well, we disagree with some of the facts you just mentioned, too. He didn't request that he be transferred to another department. Under our evidence, the way we look at the evidence in his testimony, he requested that he get a new supervisor. Then he got this other job, which required him to do entry-level construction work, not the same electrical duties which he liked, and the toilet cleaning and all that other stuff that we talked about. I think on the electrical duties, he did not have an electrician's job. He had another job that was classified as more like a general competence job. It's just that he happened to know something about electrical, so they used him for that. But then when he kept telling his boss he was wrong about how he was doing it, his boss disagreed, and this fellow asked for a different boss. Correct. Well, was there a different boss who wasn't outside that department? Well, after he requested the different boss in February of 08, I believe it was, then a couple of months later, he was transferred to a different department and had to do different things, and then got a new boss. I know. But was it too tantamount to the same thing? Was there a different boss within the department that he was in? Of what? By asking for a different boss, was he necessarily asking for a transfer? I don't understand. Was there a different boss in the department that he was already in, or was he the guy that he wanted out from under, the head of the department, and so the only way to get out from under him was to transfer to a different department? Oh, well, they did change the bosses in the department he was in, I believe. But, of course, to get a new boss in the new department. I know, but I don't know. How did a new boss, would he have had to go to a different department? Right. In other words, is it all the same? Is it all spinach? Is it all the same thing in the sense that in order to get another boss, you had to go to a different department? So he did ask for a transfer to a different department as a functional matter. Well, he didn't think so at the time. I mean, he thought he would get a different boss in his department. That's what he asked for. He thought he'd get his boss fired or transferred or demoted instead of him getting transferred? The initial boss had been reprimanded, if you recall, from the FACTS IV, one of the claims we were making. So what he had was a power struggle with the one boss in that department. You can look at it, I guess, as a power struggle. But the one boss in that department is the relevant part. Maybe, yes. So, but anyway, as to the First Amendment free speech claim, we do not think there's any evidence that just because he had maybe called ADOSH before means that's his official job duty. It's not. And the First Amendment claim is our main claim in this case. But for all we know, because the jury wasn't told that that was a problem, they could have said, oh, well, the reason he was fired is because he went to AOSH, and so therefore there's no FLSA retaliation claim. Could. Right. That's absolutely correct. How many times did he go to AOSH and when? Well, he only did once for our claim. Then there's evidence that the district judge found this must be his official duties because he had gone there in the past to check up on things, to make complaints about the machine guards and so forth. But there was evidence to that. There was evidence of that. And I think that's what the district judge used to make its ruling, which we'd say is error, because it doesn't mean that's what his official job was. Okay. Anything else you want to tell us? Yes. I think we've talked about the second issue is the different adverse actions. I think this circuit is very clear on that, that these other adverse actions, I listed about five of them, are the types of things that could reasonably dissuade an employee from making a complaint. Well, you don't have to go that far. All you have to demonstrate is that he should have gone to the jury. Correct. I'd like to talk about the but-for instruction, though, on the one that did go to the jury, the one that we lost on, and that is from the Gross case. All I want to add is that we have a couple prior cases which don't not seem to apply a but-for rule, but then we have Gross, and the real question is how close is it to this that a three-judge panel is bound by it? That seems to me the only question, because, I mean, objectively speaking, I can't see why Gross, in the long run, wouldn't, if this was a de novo question, wouldn't apply here, or wouldn't by analogy apply here. And the question is, is the analogy good enough for us as a three-judge panel? Well, the only addition I want to make on the Gross argument is if you look at page 2351 in 129 of the Supreme Court, where they cite to footnote 4, they say, the burden of persuasion necessary to establish employer liability is the same in alleged mixed motive cases as in other ADEA disparate treatment cases. Well, right. In some ways, I don't understand why you're not better off with the but-for instruction, to be frank, because you can have more than one but-for cause, right? So if so, and what this instruction does is it doesn't let the employer out the other end. So I don't understand why you're not better off with it. Well, because the substantial motivating instruction under the mixed motives, I think, still survives Gross, when it says in that footnote that what we're after in the mixed motive cases that we don't want is we don't want the employer, then, to have the shifting burden of proof of persuasion, to have to show that even though there's evidence that the protected conduct caused the problem, he would have made the decision anyway. That's what the Supreme Court was upset about. And if you look at footnote 4, it really talks about that. And that's why I then use the dissent of the four majority justices in this other case. I have trouble with this. The way the Supreme Court reasoned in Gross was that Title VII uses the phrase motivating factor, but the Age Discrimination Act uses the phrase because of, in that case, because of age. And then it looks at the Fair Labor Standard Act, and it says, and we see the Fair Labor Standard Act, it doesn't say motivating factor. It says because. So it's really hard to see a justification for distinguishing Gross. They both say because. And, frankly, I happen to recall the debate back, I think it was in the 70s, when in tort law there was a lot of debate about whether to use but-for or substantial factor instructions. And the idea was substantial factor was in addition to but-for causation. But for shoe the war or horseshoe, the war was lost. But the lack of the horseshoe wasn't a substantial factor in losing the war. It's a con – just a contingency that occurred. And the idea was you need both to have legally responsible causation. Here it seems like it would be as in torts, you need at least but-for causation and maybe more, rather than not even but-for causation and less, if anyone even thought of the bad thing they weren't supposed to think about. Well, I would merely say that we believe the way the district judge attempted to define the causation, it makes it look like a sole cause, which I don't think is applicable. I'm worried about that, but I just looked at it. He didn't say that. He didn't say that. It has to be something the firing wouldn't have occurred without that having occurred first. That's all his instruction meant. Okay. And that's pretty tolerant instruction. Can I say something about the attorney's fees or are we out of time? I think we're out of time, so thank you very much. I wanted to say to both of you that I thought your briefs were just really first rate and really helpful, so unusually so, so thank you. Thank you. And that covered your brief as well. Really unusually helpful. Thank you very much. May it please the Court, and good morning. My name is Jim Jellison. I represent the City of Prescott and the various managers and supervisors that are also named in this case. Counsel, the hard part for you is, I think, the Garcetti issue, because what it seems to say is that the employee doesn't have First Amendment protection for the kind of speech that he engages in as part of his job, and the inference that people have tended to draw from it is that if he's talking at a school to the public or the newspapers or other enforcement agencies or whatnot, then maybe he still does have First Amendment protection. Tell me two things about that. Why he doesn't have First Amendment protection because he was talking at a school, and second, assume for purposes of argument that his speech was protected under Garcetti because he was talking to a different enforcement agency. Is there any way you can save your judgment if that's true, or must it be remanded? No. I think, Your Honor, that one of the most important things to remember about Garcetti is it promoted a functional approach or analysis on this, and a very simple one, in fact. If the employee was doing something that they're getting paid to do and it's part of their job, then they're not going to be able to do it. Yeah, but it's real hard to say that part of your job as an employee is to complain about your boss to a different agency and try to get them in trouble with it. Well, and that's what I want to analyze, because the other, the flip side of that is if you're acting as a private citizen, and I believe Garcetti uses those terms, well, then you do have those First Amendment protections. Now, McBurney makes an interesting concession, of course, in his reply brief when he says that he was paid to do electrical work safely and to report safety violations internally. Right. So the focus really is on this ADOSH report. So you tell your boss, that's one thing. Do you tell OSHA, that's another thing. And that's where I asked the Court to look really deeply into what was presented to the district judge on summary judgment, because really the crux of McBurney's defense to the summary judgment ruling was, really, this isn't part of my job description. And he provided a very conclusory statement to that effect, but it was really contrary to what he said. And I don't even care about that. It strikes me as something that you wouldn't need a written job description to know that you tell your boss about problems, but you don't go to the cops or go to OSHA or something like that. Well, let's look at what happened with OSHA, because I don't think it's fair to say that this is a set-up. There are a few jobs, like with lawyers, there are some things that comes up all the time with bars. Do you have to file a complaint with the bar when some other lawyer does something you think is unethical? Well, remember what happened with OSHA here, though. McBurney makes the claim that he called OSHA before OSHA, and I think her name was Ms. Mandeville, showed up at the city. Because it was summary judgment, so, yes, we assume it happened. But let's take a look at what the judge got on summary judgment. One of the items of evidence was the report from the OSHA representative, the indication being that the city had called OSHA, the city had invited OSHA to city premises. Let's assume, for purposes of discussion now, that when they said the city, they meant this fellow, McBurney. And let's assume he was talking out of school, it was not part of his job to complain to OSHA. Is there any way you can save the judgment if that's true? Yes, there is. And number one, the report actually is very specific that Ms. McGurk called OSHA to have OSHA come down. Hold on. I don't think you understood my question. I wanted to assume for purposes of discussion that he was protected by Garcetti when he called, that he called OSHA and he was protected by Garcetti. Assume the facts against you on that. Can you still save your judgment? I'm not asking you now to argue the facts. I know you can't. Well, then it's got to go back down to the court, I think, for that assessment. I don't know that's the case. To the court or to the jury? Well, first of all, the district judge here stopped at that stage, and so is it possible there's still summary judgment on some other ground? Is that what you're saying? Or are you saying it's going to the jury? I think you're – I think that really, because now you're talking about an issue that takes into account the totality of the case. You know, Judge, you have before you the testimony of McBurney on what he really did in terms of reporting to OSHA that came out at the trial. On – at McBurney, excerpt of records 235 to 236, he claimed that he called OSHA for the purposes of obtaining training materials that could be available for the city on this idea of this cross-training issue. He said that there was one call that he made to OSHA in that regard. He said he made a second call to OSHA before OSHA came down and had the meeting at the city. And he said in that – in that meeting, he contacted Mr. Harnsberger, and the purpose of that contact was to complain about personal retaliation against him, at which point Mr. Harnsberger referred him to the anti-retaliation arm of ADOSH. And that's at McBurney ER 240 and 243. So if the Court feels that the judge didn't make the correct ruling on summary judgment, I think that the Garcetti issue still goes back to the Court, so the Court can assess the district judge. So the judge has to decide, or he gets another jury trial on this retaliation for the exercise of a street speech right, or what? Well, at that point, I think it's a Rule 50 motion, because there's been trial testimony that's been developed on it. You know, the appeal here is the appeal from the summary judgment ruling. But I lost it there. Wait a minute. Whose Rule 50 motion? Well, it would be one I'd bring. What Rule 50 motion? Well, if this Court agrees with me and says, well, we think that the judge made the an incorrect determination on summary judgment with what he had, the reality is that during the course of the trial, the judge learned more about the nature of Mr. McBurney's contacts with ADOSH before the meeting with McGurk and Mandeville that I really think that the district judge, or this Court, frankly, if you wanted to take the mantle, could have done better. You've lost me. I'm trying to figure out what we do procedurally. Are you saying summary we reverse the summary judgment, it goes back, there's a new summary judgment proceeding, but new materials are attached, some trial transcript, or are you saying it goes back? I think you're trying to say it's a judgment as a matter of law for some reason because of the trial, but the trial wasn't on this issue, it wasn't on the free speech issue. That's why I'm getting confused. Correct, Your Honor. And I think procedurally the problem is that the issue was decided on summary judgment, but the case didn't end on summary judgment. Can I ask you this as to the chronology? The summary judgment on the First Amendment claims came first? It did. And then there was a trial with respect to the FLSA retaliation? There was a trial with respect to the FLSA retaliation, but at that time the judge also allowed the State law safety violations case, allowed evidence on that, because it still was in play. Because the issue in the FLSA trial to the jury was what? Why he was fired? Well, it was whether or not that would be a, you know, a fundamental issue, but also whether or not he was retaliated against. It wasn't why he was fired, it was whether he was fired in retaliation for his FLSA safety claims. And the State law public policy claim never did go to the jury. Is that right? It didn't go to the jury, but the plaintiff presented evidence on whether his ---- Right, but there's no verdict. There is consequently no verdict on whether he was fired in retaliation for his safety complaints. But he presented a case. I understand that, but there's no verdict. And as part of that case, he stated that his he he he what he did is he put more meat on what his contacts with ADOSH were than what appears in his affidavit. He can see in his affidavit on summary judgment, he says barely nothing. He says, I called ADOSH because I wanted to complain about this idea that I, McBurney, have to train these people. It's all a trial. Just legally speaking, in terms of this First Amendment claim, are you what is your contention that the facts don't stand up, or is it that even if he went to OSHA and made a complaint about having to cross-train people and how it's not safe, he wouldn't, it's part of his job? That's what I understood the district court to say. And that's what I thought you were saying. Is that what you're saying or not what you're saying? My contention is that the district judge was correct on summary judgment. But my contention is also that during the course of the trial, because Okay. So let's take the first one. What am I correct in saying that the only cases that possibly support you on the ground that going outside, to an outside agency, is not protected are the two policeman cases, Dahlia and its predecessor? And I don't read either one of those to create a per se rule that simply going out of the agency means that you're First Amendment covered. I think you still have to look at the nature of the fact that In both of those cases, they said they weren't First Amendment covered. But is there any case that, other than those, that say that going – there are lots of other cases that seem to say that going outside the agency, you are First Amendment covered. I don't think any of those cases create a per se rule. I think you still have to look at the circumstances. Is this person going to the agency because it is part of their job to go to the agency? Let's say – let's go back to this trial issue a minute. I did not read the trial transcript. I would guess that a trial in this case would have been about why he was fired. Was it? And what was the thrust of the trial? The trial was about why he was fired. And in the plaintiff's case in chief, they posited that he was fired in retaliation for raising overtime issues. And as a defense, what was the defense explanation of why he was fired? I'm sorry? What was the defense explanation to the jury of why he was fired? He was fired as part of a layoff, but from a performance standpoint, there were a number of issues cited, and one of them was that he was refusing a reasonable request by his supervisor to train other people. So if, for example, if the jury thought that that was the reason he was fired and that the fact that he went to A.I.S.H. about that was part of the reason he was fired, but that's not a problem because nobody told us it's a problem, they could have found for the defendants, right? Because nobody told them it was a problem that he – that if he went to – to OSHA. So they could have thought that was part of the reason he was fired, and it's not for FLSA, so you win. I agree with – I don't know what the jury's thinking was about OSHA. So there's no way to read this verdict as having decided that he wasn't fired because he went to OSHA. I think that's a fair assessment of the verdict. All right. Let me ask you about the FLSA issue. The adverse employment consequence issue. Why was it legitimate to not send any of it to the jury except the termination? Isn't the case law essentially that this is a legal standard and it's up to the trier of fact? Well, I think the seminal case is going to be the white case. Which? The Supreme Court case. Right. The Burlington case. Right. And of course, that case sets a standard by which, in work and outside of work, adverse actions that reasonably could deter people, those can constitute retaliation. But there were disputes about why he was sent off to clean the toilets and why he was transferred and so on. And why doesn't it get to the jury? Well, the white case recognized that the workplace environment's a dynamic one. And you are often called upon to do things that annoy you, that are, in the end, trivial, things that you don't want to do. True. I understand. I still want to know why it doesn't get to the jury. Well, because if you just say that any adverse action, trivial or not, goes to the jury. Well, he was certainly – I mean, on his version of the facts, he was functionally an electrician, even if that wasn't his job, and he loved what he was doing, and they all knew he loved what he was doing, and now they're sending him off to clean toilets. Now, that may not be true, but that was his story. And why isn't – I mean, is your argument that that didn't happen, or is your argument that that's not an adverse action? My argument is that the district judge exercised a summary judgment of responsibilities and assessments properly, because he seemed to think that wouldn't make it as an adverse action. That can't be right. Well, I think because some things, in accordance with Burlington and White, are so small that they don't actually go to the jury, because no jury could reasonably conclude that. But what about that example? Excuse me? What about that particular one, the transfer? I understand there's a dispute about whether he did it voluntarily. I understand that there's a dispute about whether he was really treated differently. I understand all that. But if the facts – could the jury have found what he was claiming, and if they did, why wouldn't – why couldn't they have found that to be something that mattered enough that it would have discouraged him from complaining? Well, because McBurney admits that he requested a new supervisor, and McBurney got a new supervisor. McBurney not only got that, but he got a supervisor that he had positive experiences with. And his park and recreation director said that would be an adverse action. But that's a different issue from whether this would be an adverse action if it was as he portrayed it. Well, again, he went to a supervisor that he had a positive history with. He made the request for the supervisor. I don't see how that was adverse. And I'll say one thing else. Mr. Hanneman, the new supervisor, did not know anything about the FLSA complaints. He stated so, and that went undisputed on the record. And so anything that Mr. Hanneman did, however you want to characterize it, there's no causal nexus to say that that's retaliation for an FLSA claim. You've got to know about it to retaliate against somebody about it. The things that Mr. Smith did, the e-mail and the one toilet assignment that even Mr. Smith did, those are what Burlington v. White tells us don't rise to the level of actionable retaliation. Okay. Your time is up. Thank you, Your Honor. Can I just ask one question? Were there cross motions for summary judgment on the retaliation, first retaliation issue with respect to the safety? You know, the retaliation – try to get my history correct on this. I don't recall that there was a summary judgment motion that was specifically directed at actions short of termination being excluded. The judge excluded the case or got rid of the case on the actions, the retaliatory things short of termination as part of a Rule 50 motion. And I'll have to be honest with you, I can't recall if that occurred after the plaintiff's case or after my case, but it was part of a Rule 50 motion. Okay. Thank you both very much for a well-argued case. If Ernie v. Prescott is submitted, we're going to take a 10-minute break. Thank you very much.
judges: Schroeder, Kleinfeld, Berzon